NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

RICHARD C. ROMANIELLO,

    *Plaintiff*,

    v.

THE LITTLE FALLS POLICE DEPARTMENT
et al.,

    *Defendants*.

---

Civil Action No. 24-729

**OPINION**

March 4, 2026

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on The Little Falls Police Department, The Township of Little Falls, John[1] Cespedes, and Steven Post's (collectively, "Defendants") motion for summary judgment. (ECF 26, "Mot.") Plaintiff Richard C. Romaniello ("Plaintiff") filed an opposition. (ECF 27, "Opp.") Defendants filed a reply. (ECF 29, "Reply".) The Court reviewed the submissions made in support of and opposition to the motion and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

---

[1] Jonathan "Jon" Cespedes is misnamed in the lawsuit as "John Cespedes."

[2] The facts and procedural history are drawn from the Complaint (ECF 1, Exhibit A, "Compl."), Defendant's brief in support of the motion for summary judgment (ECF 26-1), Defendant's statement of undisputed material facts (ECF 26-3, "DSMF"), Plaintiff's opposition papers (ECF 27) and statement of material facts in opposition (ECF 28, "PSMF").

Plaintiff Richard Romaniello is a retired Woodland Park police officer who brought this suit following his arrest for theft and burglary by the Little Falls Police Department.  On October 7, 2020, an officer from the Little Falls Policy Department was dispatched to the Route 46 Jeep and Chrysler Dealership to investigate a reported theft.  (DSMF ¶ 1.)  A customer of the dealership had dropped his car off on October 5, 2020 and reported that his Gucci sunglasses valued at approximately $505 were taken from the vehicle while it was parked in the dealership's lot.  (*Id.* ¶ 3, 11.)  The vehicle contained a dash camera that captured video footage which was provided to the responding officer.  (*Id.* ¶ 5.)  The police report contains the following summary of the dash camera footage:

> At approximately 4:55 PM on 10/05/20, noise coming from the passenger's side of the vehicle can be heard; indicative of someone trying to open a car door—possibly, this is what triggered the dash cam to start recording. Shortly after, a stocky while male wearing a gray t-shirt can be seen walking in front of the vehicle—coming from the passenger's side, and over to the driver's side. Once the male is out of view, a car door can be heard being opened and a male voice saying, "oh wow look at this." A beep is then heard coming from within the vehicle and the male voice can be heard saying, "fob…fob fob city." [A dealership employee] related that it sounds like this male had attempted to turn the car on but was unable to due to the key fob not being inside the vehicle-explaining the beep heard. Some other noises are then heard, indicative of someone rummaging around and a male voice is now heard singing from within the vehicle. The male voice can then be heard saying, "nice…this is very nice" and "gift certificate." The video then cuts off.

(*Id.* ¶ 6; *see also* ECF 26-2, "Exhibit C".)  The vehicle's owner also provided still images of the individual who was "depicted to have the pair of sunglasses that had been taken in his hand" when he left the vehicle.  (*Id.* ¶ 7; *see also* ECF 26-2, "Exhibit H".)  An employee at the dealership identified the individual in the footage as another customer of the dealership, Plaintiff Richard Romaniello.  (*Id.* ¶ 8.)  Plaintiff does not dispute it is him in the photographs, but he avers that the still images depict him holding his cell phone in his left hand, not a pair of sunglasses.  (PSMF ¶ 4.)

Detective Jon Cespedes of the Little Falls Police Department was assigned to investigate the reported theft.  (DSMF ¶ 12.)  Detective Cespedes reviewed the report prepared by the responding officer as well as the dash camera footage and images provided by the vehicle's owner.  (*Id.* ¶¶ 13-15.)  Detective Cespedes contacted the owner who informed him that he had several gift certificates to a car wash in his glove department, none of which were stolen, but "explained to Cespedes why [Plaintiff] said 'gift certificates' in the video of the incident."[3]  (*Id.* ¶ 16.)  Detective Cespedes also discovered that Plaintiff's Jeep Wrangler was serviced at the dealership on October 6, 2020, which would explain his presence at the dealership on October 5.  (*Id.* ¶¶ 17, 18.)  Detective Cespedes then performed a Facebook search and determined that Richard Romaniello matched the individual depicted in the dash camera footage and still images. (*Id.* ¶ 19.)

On October 8, 2020, Detective Cespedes called Plaintiff and requested he come into headquarters of the Little Falls Police Department to be charged and processed.  (*Id.* ¶ 20.)  Over the phone, Plaintiff "asked for professional courtesy that the Detective review his work as he was making a big mistake."  (PSMF ¶ 5.)  Three hours later, Detective Cespedes was contacted by an attorney representing Plaintiff who advised him that Plaintiff would turn himself in to be processed the following day.  (DSMF ¶ 21.)  The next day, Detective Cespedes was told that Plaintiff was undergoing surgery and that Plaintiff would report to headquarters on October 12.  (*Id.* ¶ 22.)  On October 12, Plaintiff reported to the Little Falls Police Department where he was photographed, fingerprinted and processed without incident.  (*Id.* ¶ 23.)  Plaintiff was charged with Burglary and Theft of Moveable Property in violation of N.J. Stat. Ann. 2C:18-2A(1) and 2C:20-3A.  (*Id.* ¶ 24.)

---

[3] This also indicates that Plaintiff looked in the vehicle's glove department, where the sunglasses were located.

The criminal matter eventually was moved to Totowa Municipal Court, and in March of 2022, the charges against Plaintiff were dismissed. (*Id.* ¶ 31.)  In his deposition, Plaintiff did not dispute that he was at the dealership on October 5, 2020, but testified that he was there instead to speak to an employee about a deposit for a loaner vehicle when he "walked through the lot" of the dealership to look at cars for his stepson. (*Id.* ¶ 51; *see also* PSFM ¶ 1.)  He testified that he recalled sitting in several cars, including the black Jeep Cherokee out of which the sunglasses were stolen. (DSMF ¶ 53.)  Plaintiff further testified that after entering the Jeep Cherokee, he opened the glove box and saw gift certificates, and it was at that time that he realized the car was owned by somebody and exited the vehicle. (*Id.* ¶ 56.)

On February 23, 2023, Plaintiff filed the instant Complaint in the Superior Court of New Jersey, Law Division, Passaic County. (*See* Compl.)  Plaintiff brings six claims against Defendants, including for false arrest and malicious prosecution in violation of New Jersey state law and 42 U.S.C. § 1983, as well as municipality liability pursuant to 42 U.S.C. § 1983. (*Id.*)  Defendants removed the action to federal court on February 7, 2024.[4] (ECF 1.)  On February 14, 2024, Defendants filed an Answer with affirmative defenses. (ECF 3.)  The parties conducted fact discovery, which included the depositions of Plaintiff and Detective Cespedes. (ECF 26-2, Exhibit F, "Pl. Dep."; ECF 26-2, Exhibit G, "Cespedes Dep.")  On July 7, 2025, Defendants moved for summary judgment on all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56. (*See* Mot.)  Plaintiff submitted an opposition on July 21, 2025, and on July 25, Defendants filed a reply brief. (*See* Opp; Reply.)

---

[4] Defendants' removal was timely because Plaintiff's original complaint was dismissed without prejudice due to a lack of prosecution on September 9, 2023. (ECF 1 ¶ 2.)  The Complaint was reinstated by court order dated January 5, 2024. (*See* ECF 1, "Ex. B".)

4

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact [and] the moving party is entitled to a judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an

5

affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

### III.    ANALYSIS

Defendants argue that they are entitled to summary judgment because there are no material facts in dispute, because the individual defendants[5] are shielded by qualified immunity, because Plaintiff's false arrest claim is time-barred, and because Plaintiff has failed to produce any evidence of a policy or custom in support of his municipal liability claim. (Mot. at 2.) Plaintiff insists that there are material facts in dispute, including that Detective Cespedes "did not have sufficient probable cause to arrest the Plaintiff." (Opp. at 9.) Plaintiff also argues that equitable tolling should apply to extend the two-year statute of limitations for his false arrest claim, and that a jury, not the court, must determine whether qualified immunity applies. (*Id.* at 10, 14.) The Court will address the arguments in turn.

#### A. False Arrest

First, Defendants argue that any claim for false arrest is barred by the applicable two-year statute of limitations. (Mot. at 4.) Civil rights claims under § 1983 are governed by New Jersey's

---

[5] The individual Defendants here are Detective Jon Cespedes and Steven Post, Chief of the Little Falls Police Department. (*See* Ex. G, 53:12-17.)

limitations period for personal injury and must be brought within two years of the claim's accrual. *Daley v. Egg Harbor City*, No. 16-2654, 2018 WL 6110932, at *2 (D.N.J. Nov. 21, 2018) (citing *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). Claims for false arrest "typically accrue on the date of the arrest" because "at that point, the plaintiff has reason to know of the injury." *Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013) (per curiam) (citing *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998)). Plaintiff was arrested on October 12, 2020 and filed the Complaint in this case on February 22, 2023, after the expiration of the two year-statute of limitations.

Though Plaintiff argues that the two-year statute of limitations should begin to accrue on February 28, 2022, when the criminal action against Plaintiff was dismissed, Plaintiff's position is contrary to case law in this circuit, and Plaintiff's argument that "equitable tolling should be applied" is unavailing.[6] (Opp. at 10.) The two-year statute of limitations accrued when Plaintiff was arrested, and thus Plaintiff's false arrest claim is time-barred and dismissed with prejudice.

### B. Probable Cause

Next, Defendants argue that probable cause for Plaintiff's arrest existed because the "objective, undisputed facts present in this matter demonstrate that a reasonable person would believe that an offense had been committed by the Plaintiff, Richard Romaniello." (Mot. at 8.) Plaintiff maintains that "Detective Cespedes did not make an appropriate investigation and that he did not have sufficient probable cause to arrest the Plaintiff" because "Defendants proceeded with the arrest despite evidentiary material (photographs) that upon inspection showed Plaintiff with a cell phone in his hand and not a pair of sunglasses." (Opp. at 9, 10.)

---

[6] Plaintiff's brief does not provide any reason why equitable tolling should be applied here. (*See* Opp. at 9-10.)

"Typically, the existence of probable cause in a section 1983 action is a question of fact" most appropriately reserved for a jury. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)); *see also Campanello v. Port Auth. of New York & New Jersey*, 590 F. Supp. 2d 694, 702 (D.N.J. 2008) ("The question of probable cause in civil claims for false arrest and malicious prosecution is generally a question of fact.") "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) (internal quotation marks omitted).

Despite the Court's obligation at summary judgment to view facts most favorably to the non-moving party, this view of factual disagreements must account for an officer's probable cause determination. *St. Martin v. W. Windsor Twp. Police Dep't*, 753 F. Supp. 3d 369, 385 (D.N.J. 2024) (citing *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (recognizing "a tension inherent in evaluating probable cause at the summary judgment stage" given that probable cause "allows for the existence of conflicting, even irreconcilable, evidence")). The Third Circuit in *Dempsey* explained how judges should reconcile these standards:

> While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view *all* such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

843 F.3d at 468. Courts applying the probable cause standard at summary judgment regularly grant summary judgment when probable cause "exist[s] as a matter of law." *Turkos v. Dupont Borough*, 721 F. App'x 208, 212 (3d Cir. 2018); *see also Davison v. Sheaffer*, 820 F. App'x 167, 171 (3d Cir. 2020) (affirming grant of summary judgment on section 1983 claim because probable cause existed as a matter of law); *Collick v. William Paterson Univ.*, No. 21-2281, 2022 WL 14002177, at *5 (3d Cir. Oct. 24, 2022) (same).

A lack of probable cause is an element common to false arrest and malicious prosecution claims.[7] *Startzell v. City of Philadelphia*, 533 F. 3d 183, 204 (3d Cir. 2008). "Because a lack of probable cause is an element of the *prima facie* case that [Plaintiff] must establish…and because the absence of that element is as fatal to the false-arrest variety of his [1983] claim, as it is the malicious-prosecution variety," if Plaintiff fails to establish that Defendants lacked probable cause, his claims for false arrest and malicious prosecution must be dismissed as a matter of law. *Wheeler v. Wheeler*, 639 F. App'x 147, 150 n.8 (3d Cir. 2016) (internal citation omitted).

---

[7] While Plaintiff's claim for false arrest has already been dismissed as time-barred, the Court's probable cause analysis encompasses both his false arrest and malicious prosecution claims with equal force.

The elements of a false-arrest claim are (1) that an arrest occurred; and (b) the arrest was made without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

In New Jersey, in order to establish a claim for malicious prosecution regarding a criminal matter, a plaintiff must establish the following: (1) the action was instituted by the defendant against the plaintiff; (2) the action was actuated by malice; (3) that there was an absence of probable cause for the proceeding; and (4) it was terminated favorably to the plaintiff. *Lind v. Schmid*, 67 N.J. 255, 262 (1975). The absence of any element is fatal to the claim. *Penwag Property Co. v. Landau*, 76 N.J. 595, 597 (1978). To establish a claim for malicious prosecution under Section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) that defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *McKenna v. City of Philadelphia*, 582 F. 3d. 447, 461 (3d Cir. 2009) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citations omitted). Probable cause is a "totality of the circumstances" test, *United States v. Myers*, 308 F.3d 251, 260 (3d Cir. 2002), requiring an "objective" evaluation "based on the facts available to the officers at the moment of arrest." *Quinn v. Cintron*, 629 F. App'x 397, 399 (3d Cir. 2015) (citations omitted).

The facts and circumstances known to Detective Cespedes at the time of arrest would lead any reasonable person to believe that Plaintiff took the sunglasses from the vehicle. The undisputed facts show that after Detective Cespedes interviewed the victim of the theft, reviewed footage of a male entering the victim's vehicle and searching through its compartments, identified that male as Plaintiff, and confirmed that Plaintiff was present at the dealership that day. (DSMF ¶¶ 6, 8, 9, 17, 19.) Moreover, Detective Cespedes relied on still images from the dash camera that showed what appeared to be sunglasses in Plaintiff's hand as he exited the vehicle. (*Id.* ¶¶ 48-49.) Though Plaintiff complains that the still images from the dash camera "showed Plaintiff with a cell phone in his hand and not a pair of sunglasses" (Opp. at 10), a review of the still images shows Plaintiff walking away from the vehicle with an object in his right hand that resembles sunglasses. (*See* Exhibit H.) Detective Cespedes also testified in his deposition that to this day, he still believes that when Plaintiff exited the vehicle in question he was in fact holding the victim's sunglasses. (DSMF ¶ 49.)

Finally, Plaintiff argues that Detective Cespedes's failure to review "other surveillance video" as well as video of an "other party who entered the vehicle" would have uncovered evidence that Plaintiff did not commit the offense and would have made Plaintiff "a suspect at best." (Opp.

10

at 13.)  In his deposition, Detective Cespedes testified that he inquired with management of the dealership if there were exterior surveillance cameras and was told that there were no cameras in the back of the parking lot where the vehicle was parked. (Cespedes Dep., 45:2-15.)  Therefore, despite Detective Cespedes' efforts to obtain surveillance video, there was no other video from the dealership to review.   Furthermore, though Plaintiff's statement of facts indicate that the Operations Report detailed that "the owner of the vehicle also provided video of another person who was in the automobile on the day the sunglasses were purportedly stolen" (Opp. at 5), the Operations Report attached to Defendants' motion states that the vehicle's owner "also provided another video of a male that had been looking at his vehicle while it had been in the parking lot, but it appears to be unrelated to this incident." (Exhibit C at 2.)  'Looking at' is a far cry from 'entering' a vehicle.  Plaintiff's arguments strain credulity and are therefore unavailing.

Detective Cespedes had probable cause to arrest and charge Plaintiff because he was the only civilian to enter the victim's vehicle during the time it was parked in the dealership lot, and video footage showed him rummaging through the compartment where the sunglasses were stored and leaving with an object in his hand.  Therefore, there is no genuine dispute as to the lack of probable cause, an element necessary to prove Plaintiff's claims here, which accordingly must fail. Plaintiff's claims for malicious prosecution are dismissed with prejudice.[8]

### C.  Municipal Liability

Plaintiff's sole surviving claim is a municipal liability claim pursuant to 42 U.S.C. § 1983 asserted against Defendants Little Falls Police Department and the Township of Little Falls.  (*See* Compl. at 7 ¶¶ 1-4.)  To establish a § 1983 municipal liability claim, a plaintiff "must demonstrate

---

[8] Because Plaintiff's claims for false arrest and malicious prosecution have been dismissed, the Court need not address the parties' qualified immunity arguments, since no claims against the individual Defendants remain.

that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell* v. *Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)).  A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom.  *Monell*, 436 U.S. at 658.

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  The Third Circuit has stated that "proof of the mere existence of an unlawful policy or custom is not enough to maintain a § 1983 action."  *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990).  "A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered."  *Id*. (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984)).  "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue."  *Bielevicz*, 915 F.2d at 850 (citations omitted).

Plaintiff's claim for municipal liability is not properly brought against Defendant Little Falls Police Department.  For purposes of section 1983 liability, municipalities and its police departments are treated as a "single entity."  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997); *see* N.J. Stat. Ann. 40A:14–118 (declaring that New Jersey police departments are "an executive and enforcement function of municipal government").  "[P]olice departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  *Padilla v. Twp.*

*of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (citation and internal quotation marks omitted). Summary judgment will therefore be entered in favor of Little Falls Police Department on Plaintiff's municipal liability claim. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 430 (D.N.J. 2011) (entering summary judgment in favor of defendant police department sued under 1983).

Generally, a municipality cannot be held liable unless one of its employees is "primarily liable under Section 1983 itself." *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curium) (holding that a municipality cannot be held liable under 1983 if there is no underlying constitutional violation by the individual officer). Because Plaintiff has not established that the individual officers violated Plaintiff's constitutional rights, Plaintiff cannot establish municipal liability on behalf of Defendant Township of Little Falls.

Additionally, Plaintiff has failed to present *any* evidence of an alleged policy or custom that contributed to the alleged constitutional violation of false arrest or malicious prosecution. *See Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 402 (D.N.J. 2016) (granting summary judgment to city on *Monell* claim because plaintiff failed to set forth any evidence from which a reasonable juror could conclude that defendant established a policy or custom that caused plaintiff's injury). In fact, Plaintiff failed to respond to Defendants' argument regarding the lack of evidence presented of a policy or custom in support of this claim. (*See generally* Opp.) "It is well-settled that failure to meet an opponent's arguments operates as a concession." *Gillham v. Virgin Islands Supreme Court*, No. 22-00044, 2023 WL 4865072, at *3 (D.V.I. July 28, 2023), *aff'd sub nom. Gillham v. Supreme Court of Virgin Islands*, 23-2478, 2025 WL 227687 (3d Cir. Jan. 17, 2025) (citing *In re Bestwall LLC*, 47 F.4th 233, 244 (3d Cir. 2022) (finding that a court

13

may "treat the failure of a party to respond to its opponent's arguments as a concession" that the assertions are true) (cleaned up)).  Therefore, Plaintiff has waived his claim against the Township of Little Falls as a matter of law.

Consequently, Plaintiff's 1983 municipal liability claim is dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion for summary judgment (ECF 26) is **GRANTED**.  Plaintiff's Complaint (ECF 1) is **DISMISSED** with prejudice.  An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties

14